NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEITH and HELEN SEQUIERA,

Plaintiffs,

v.

JP MORGAN CHASE BANK, N.A., et al.,

Defendants.

Civil Action No. 16-5278 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon JP Morgan Chase Bank, N.A.'s ("Defendant" or "Chase") Motion to Dismiss (ECF No. 45) Keith and Helen Sequiera's (collectively, "Plaintiffs") Third Amended Complaint ("TAC") (ECF No. 43). Plaintiffs opposed the Motion to Dismiss (ECF No. 47), and Defendant replied (ECF No. 48). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendant's Motion to Dismiss is denied.

**I.  BACKGROUND[1]**

Plaintiffs purchased their home at 35 Woodland Drive, Middletown, New Jersey on August 20, 2004. (TAC ¶ 5.) Plaintiffs secured a mortgage on the home through a note payable to Washington Mutual Bank, N.A., for $344,000.00. (TAC Ex. 1, ECF No. 43-1.) Plaintiffs subsequently defaulted on the mortgage in August 2008. (TAC ¶ 10.) On February 19, 2009,

---

[1] The Court accepts as true all adequately pled factual allegations within the Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Defendant filed a foreclosure action against Plaintiffs in the Superior Court of New Jersey, Chancery Division, Monmouth County. (TAC Ex. 3; ¶ 11, ECF No. 43-1.)

On January 15, 2010, Plaintiffs and Defendant successfully settled their dispute in compulsory mediation, and the terms of the settlement were memorialized in the Foreclosure Mediation Settlement Memorandum ("Settlement Agreement").[2] (TAC Ex. 4, ECF No. 43-1.) The Settlement Agreement provided the following:

1. Chase in[-]house trial modification product. Payments at $2033.15 for [three] months due on [February 1, March 1, and April 1, 2010] based on debt to income ratio.

2. Thereafter Chase will review updated financials. Borrower to give documentation to Novadebt who will send to bank.

3. Bank will continue to pay taxes [and] insurance. Loan is an escrowed loan.

(*Id.*)

On January 17, 2010, Chase sent Plaintiffs a Trial Period Plan Offer Letter ("TPP"), which provided, "Note that the Trial Period Plan will not bring your account current[,]" and "After successful completion of the Trial Period Plan, [Chase] will send you a Modification Agreement for your signature which will modify the Loan as necessary to reflect this new payment amount." (TAC Ex. 6, ECF No. 43-1.) The TPP also stated: "If all payments are made as scheduled, we will consider a permanent workout solution for your Loan." (*Id.*) Plaintiffs' TAC states that all payments were submitted on time, and Defendant does not contest this assertion. (TAC ¶ 28; Def.'s Moving Br. 4, ECF No. 45-1.)

---

[2] The Superior Court of New Jersey memorialized the Settlement Agreement in an order dated January 15, 2010. (TAC Ex. 5, ECF No. 43-1.)

2

In correspondence dated September 23, 2010, Defendant informed Plaintiffs that they were not eligible for a loan modification under the Home Affordable Modification Program ("HAMP") because "[b]ased on [Plaintiffs' Net Present Value ("NPV")] results, the owner of [Plaintiffs'] Loan has not approved a modification." (TAC Ex. 8, ECF No. 43-1.) Plaintiffs claim, in their opposition brief, that Defendant based the disqualifying NPV calculation on an incorrect default date. (Pls.' Opp'n Br. 8, ECF No. 47.) A year later, in correspondence dated September 23, 2011, Defendant stated that it was denying the mortgage modification because Plaintiffs "did not provide all of the documents we requested within the required timeframe, or [Plaintiffs'] documents were incomplete." (TAC Ex. 9, ECF No. 43-1.)

Plaintiffs filed the original complaint in this matter on June 29, 2016 in the Superior Court of New Jersey, Law Division, Monmouth County, alleging breach of contract; violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -20; violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e; and Economic Loss. (Compl., Pls.' Ex. A., ECF No. 1-1.) Defendant removed the matter to this Court on August 30, 2016, under federal question jurisdiction, 28 U.S.C. § 1331, raised by the FDCPA claim, and diversity jurisdiction, 28 U.S.C. § 1332(a). (Not. of Removal, ECF No. 1.)

On July 27, 2018, Plaintiffs filed the TAC. (*See generally* TAC.) Defendant subsequently filed the instant Motion to Dismiss (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging Plaintiffs failed to plead the existence of a contract, breach of contract, damages, and a violation under the CFA. (Def.'s Moving Br. 7-20.) The Court will address these arguments in turn.

## II. **LEGAL STANDARD**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

3

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must review "the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678) (citation omitted).

### III. DISCUSSION

#### A. Breach of Contract

Defendant first argues that Plaintiffs fail to plead the existence of a contract. (Def.'s Moving Br. 8.) Specifically, Defendant argues Plaintiffs fail to establish that the TPP, Settlement Agreement, and Dismissal Order are contracts because Plaintiffs cannot show that there was

4

consideration for performance of a pre-existing legal duty. (Def.'s Moving Br. 10.) Second, Defendant avers that even if the documents were contracts, Defendant never breached their terms because no term required Defendant to extend an offer for a permanent modification or to use a certain calculation in assessing eligibility for a loan modification. (*Id.* at 11-12.) Finally, Defendant contends that Plaintiffs plead unforeseeable and unrecoverable damages. (*Id.* at 13-14.)

To establish a claim for breach of contract, the plaintiff must demonstrate the existence of a contract by showing offer, acceptance, consideration, and mutual assent; the plaintiff must then show breach and damages. *See Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284-85 (N.J. 1992); *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The Court finds Plaintiffs successfully pled the existence of a contract. The Third Circuit has held, "It is well established in our Circuit and elsewhere that TPPs operate as valid contracts." *Bukowski v. Wells Fargo Bank, N.A.*, No. 17-3253, 2018 WL 6584119, at *11 (3d Cir. filed Dec. 13, 2018) (citation omitted); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 562 (7th Cir. 2012) ("Here a reasonable person in [the plaintiff's] position would read the TPP as a definite offer to provide a permanent modification that she could accept so long as she satisfied the conditions."). Thus, the TPP itself is an enforceable contract, and therefore, Defendant's consideration argument necessarily fails.

Additionally, Plaintiffs pled that the Settlement Agreement constitutes a valid contract because it is an agreement containing sufficiently definite terms, for which Plaintiffs received the benefit of Defendant's dismissal of the pending foreclosure action. (*See* TAC Ex. 4; TAC ¶¶ 12-23.) "Contract law governs the interpretation of a settlement agreement. Like any contract, a valid settlement agreement requires an offer and acceptance by the parties, and the terms of the agreement must be sufficiently definite [so] that the performance to be rendered by each party can be ascertained with reasonable certainty." *GMAC Mortg., LLC v. Willoughby*, 165 A.3d 787, 794

5

(N.J. 2017) (internal quotations and citations omitted) (finding the settlement agreement to constitute a valid contract). Thus, the Court finds Plaintiffs sufficiently pled the existence of a contract.

Defendant argues that even if the "trio of documents alleged by Plaintiffs" to constitute a contract were termed by the Court to be a contract, the terms of those documents do not require Defendant "to use any specific criteria when reviewing the updated financials for a permanent modification or, most importantly, to actually offer a permanent modification." (Def.'s Moving Br. 11, ECF No. 45-1.) Here, the parties do not dispute that Plaintiffs successfully submitted the required payments under the TPP; rather, they dispute whether Chase was required to modify Plaintiffs' loan upon successful completion. (Def.'s Moving Br. 9-10; Pls.' Opp'n Br. 8-10.) The TPP provided, "After successful completion of the Trial Period Plan, [Chase] will send you a Modification Agreement for your signature which will modify the Loan as necessary to reflect this new payment amount." (TAC Ex. 6, ECF No. 43-1.) Although the TPP contains conflicting language indicating that Chase will merely "consider" offering a modification (*Id.*), the Court is satisfied that, at this motion to dismiss stage, Plaintiffs have successfully pled enough facts to support their assertion that Chase breached the TPP.[3]

Moreover, Defendant's damages argument is unavailing. Plaintiffs aver that they have sufficiently pled damages in that they submitted trial period payments, yet did not receive the loan modification. Plaintiffs also contend that Defendant failed to timely pay the insurance premiums, as required by the Settlement Agreement. (Pls.' Opp'n Br. 8-10.)

---

[3] The Court declines to make a finding at this point as to whether the TPP is ambiguous. Rather, the Court emphasizes that, at this motion to dismiss stage, Plaintiffs successfully pled their breach of contract claim. *Cf. Pacifico v. Pacifico*, 920 A.2d 73, 78 (N.J. 2007) ("When a contract term is ambiguous, that rule of contract interpretation requires a court to adopt the meaning that is most favorable to the non-drafting party.").

Defendant fails to convince the Court that Plaintiffs remitting the trial period payments without receiving the benefit of the loan modification does not constitute damages. Moreover, the Court finds Plaintiffs successfully pled damages in the amount of the increase in Plaintiffs' insurance rates due to Defendant's failure to pay the insurance premiums, as required under the Settlement Agreement. The Court, accordingly, finds that Plaintiffs successfully pled the existence of a contract and breach of contract, and therefore, denies Defendant's Motion to Dismiss Plaintiffs' breach of contract claim.

### B. Consumer Fraud Act

The Third Circuit has established that the CFA covers TPP documents, holding in *Bukowski* that misrepresentations within a TPP concerning eligibility for a permanent modification may violate the CFA. *See Bukowski*, 2018 WL 6584119, at *4. Additionally, Plaintiffs cite the New Jersey Supreme Court, which held that "collecting or enforcing a loan, whether by the lender or its assignee, constitutes the 'subsequent performance' of a loan, an activity falling within the coverage of the CFA." *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1116 (N.J. 2011). Thus, in light of *Gonzalez*, the District Court for the District of New Jersey held that the CFA covers TPPs. *See e.g.*, *Beals v. Bank of Am., N.A.*, No. 10-5427, 2011 WL 5415174, at *16 (D.N.J. Nov. 4, 2011) (holding that loan modification agreements were covered under the CFA as subsequent performance of a loan, in accordance with the *Gonzalez* court's reasoning); *Laughlin v. Bank of Am. N.A.*, No. 13-4414, 2014 WL 2602260, at *6 (D.N.J. June 11, 2014) ("The loan modification process, from negotiation to the signing of a permanent modification, effectively operates as a subsequent performance on the original mortgage."); *Jubelt v. United Mortg. Bankers, Ltd.*, No. 13-7150, 2015 WL 3970227 (D.N.J. June 30, 2015) (relying on *Gonzalez* to hold that "misrepresentations regarding mortgage modifications fall within the [CFA.]"); *Giordano v. Saxon*

7

*Mortg. Servs. Inc.*, No. 12-7937, 2014 WL 4897190 (D.N.J. Sept. 30, 2014) (finding that the plaintiffs had sufficiently pled a claim for material misrepresentations made in a TPP).

To establish a claim under the CFA, a plaintiff must demonstrate: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal nexus between the "method, act, or practice declared unlawful" and the consumer's "ascertainable loss." *N.J. Citizen Action v. Schering Plough Corp.*, 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003) (citation omitted). Ascertainable loss must "not [be] hypothetical or illusory, and must be presented with some certainty demonstrating that it is capable of calculation." *D'Agostino v. Maldonado*, 78 A.3d 527, 540-41 (N.J. 2013) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792-93 (N.J. 2005)). Under the CFA, consumer fraud is "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale or advertisement of merchandise or real estate . . . ." N.J.S.A. 56:8-2. The CFA is intended to be construed broadly in favor of the consumer. *See Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 461 (N.J. 1994).

1. **Ascertainable Loss**

Defendant argues Plaintiffs have failed to plead ascertainable loss. (Def.'s Moving Br. 20.) Defendant claims that Plaintiffs' non-economic losses are not recoverable, and that Plaintiffs' credit reporting is preempted under federal law. (*Id.*) Defendant states "[a]t most, Plaintiffs have claimed that this series of events caused them to make payments on a pre-existing Loan, which reduced their delinquency on the antecedent debt . . . ." (*Id.*)

In opposition, Plaintiffs argue that they have satisfied the sufficiently definite standard of ascertainable loss under the CFA by demonstrating that "Defendant deceitfully and unlawfully induced Plaintiff[s] to pay [the TPP payments] in return for receiving nothing . . . ." (Pls.' Opp'n

Br. 16.) Plaintiffs cite a recent case from this district in which the Honorable Freda L. Wolfson, U.S.D.J., found that the plaintiff had satisfied the ascertainable loss standard by adequately pleading damages via the damages element of the breach of contract claim. (*Id.* (citing *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 594-95 (D.N.J. 2016) ("The damages for [the plaintiff's] CFA claim are the same as those set forth for the underlying breach of contract claim.").)

To establish "ascertainable loss," under the second element of a CFA claim, a plaintiff must show "evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." *Thiedemann*, 872 A.2d at 792. "[A] claim of loss in value must be supported by sufficient evidence to get to the factfinder. To raise a genuine dispute about such a fact, the plaintiff must proffer evidence of loss that is not hypothetical or illusory." *Id.*; *see also Weinberg v. Sprint Corp.*, 801 A.2d 281, 290 (N.J. 2002). An "ascertainable loss" equates to "a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).

As the Court previously found, Plaintiffs successfully pled damages relating to the underlying breach of contract claim. Those damages demonstrate that Plaintiffs pled an ascertainable loss for the purpose of their CFA claim. Specifically, Plaintiffs have sufficiently pled an ascertainable loss in the amount of the forfeited TPP payments. (TAC ¶¶ 17, 28.) Plaintiffs have also sufficiently alleged that Defendant caused Plaintiffs' insurance premiums to rise by failing to remit required payments on time. (TAC ¶ 33.) The forfeited TPP payments and the insurance rate increases are actual, definite, not hypothetical, and sufficient to characterize as "ascertainable losses" under the CFA. *See Thiedemann*, 872 A.2d at 792. The Court, therefore, finds that Plaintiffs have sufficiently pled an ascertainable loss. (TAC ¶¶ 17-28.)

## 2. Unlawful Conduct

Defendant also argues Plaintiffs have failed to plead unlawful conduct because Plaintiffs failed to plead facts to suggest that Defendant induced action on the part of Plaintiffs, or that Plaintiffs' TPP payments were not properly credited to Plaintiffs' account with Defendant. (Def.'s Moving Br. 17-20.) Defendant claims that "[a]t most, Chase agreed to dismiss the foreclosure and review Plaintiffs' Loan account for a permanent modification, both of which Chase clearly did." (*Id.* at 18.) Defendant states that "one cannot be induced to make payments against a loan that is already owed," and that, even if Defendant made mistakes, these mistakes did not rise to the level of material misrepresentations prohibited by the CFA. (*Id.*)

Plaintiffs argue that Defendant induced Plaintiffs to make the TPP payments with "false promises of permanently modifying Plaintiffs' loan if payments were made and Plaintiffs submitted appropriate documents," and that these "false promises" constitute material misrepresentations under the CFA. (Pls.' Opp'n Br. 14.)

Under the first element of a CFA claim, unlawful acts "fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Cox*, 647 A.2d at 462. When the defendant commits an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Id.* (citing *Chattin v. Cape May Greene, Inc.*, 591 A.2d 943, 944 (N.J. 1991)). When the alleged unlawful act consists of an omission, however, "the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud." *Id.* (emphasis in original).

10

Whether Plaintiffs have sufficiently pled an unlawful act by Defendant is a closer call.[4] The material misrepresentation[5] that Plaintiffs allege is an affirmative act. The affirmative act, consequently, vitiates the need for Plaintiffs to show intent. *See Gennari v. Weichert Co. Realtors*, 672 A.2d 1190, 1205-06 (N.J. Super. Ct. App. Div. 1996) ("Where a broker or merchant makes an affirmative misrepresentation of material fact, the [CFA] does not require a showing of falsity or intent to deceive in order to hold the offender liable to the purchaser."). Plaintiffs pled that the material misrepresentation in this case is the extension of the TPP contract, which reasonably led Plaintiffs to believe that if they complied with the terms, they would receive a loan modification.[6]

Here, Plaintiffs were parties to a TPP that included two arguably conflicting provisions.[7] At this stage of litigation, the Court need not determine whether Defendant was contractually

---

[4] The inducements in this case are more attenuated than in other cases. Plaintiffs rely heavily on *Gonzalez* in opposition. *Gonzalez*, 25 A.3d at 1103. In *Gonzalez*, the New Jersey Supreme Court held that "[f]raudulent lending practices, even in a post-judgment setting, may be the basis for a [CFA] lawsuit." *Id.* at 1107. In *Gonzalez*, the elderly woman who lacked more than a primary-school education and did not speak English was induced to pay an additional balloon payment. *See id.* at 1119. In *Bukowski*, the Third Circuit held the plaintiffs were induced to agree to a non-HAMP compliant contract after the defendant had misrepresented that it was exempt from certain HAMP guidelines. *Bukowski*, 2018 WL 6584119, at *4. The *Bukowski* plaintiffs filed suit against Wells Fargo Bank, N.A. for breach of contract. *Id.* at *1. They also brought claims under the Real Estate Settlement Procedures Act and the CFA. *Id.* The Third Circuit found that the *Bukowski* plaintiffs had adequately stated claims for breach of contract and violations of the CFA. *Id.*

[5] "[N]ot just any erroneous statement will constitute a misrepresentation prohibited by the [CFA]. The misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608 (D.N.J. 2016) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 366 (N.J. 1997)).

[6] The provision read: "After successful completion of the Trial Period Plan, [Chase] will send you a Modification Agreement for your signature which will modify the Loan as necessary to reflect this new payment amount." ( TAC Ex. 6, ECF No. 43-1.)

[7] These provisions read: "After successful completion of the Trial Period Plan, [Chase] *will send you a Modification Agreement* for your signature *which will modify* the Loan as necessary to reflect this new payment amount"; "If all payments are made as scheduled, *we will consider* a permanent workout solution for your Loan." (TAC Ex. 6 (emphasis added).)

11

obligated to offer a permanent modification at the conclusion of the TPP. For the purposes of this Motion to Dismiss, Plaintiffs have sufficiently pled that the statements in the TPP reasonably induced Plaintiffs to remit payments in exchange for a loan modification, which they did not receive. The Court, therefore, denies Defendant's Motion to Dismiss Plaintiffs' CFA claim because Plaintiffs have sufficiently pled ascertainable loss and unlawful conduct.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Complaint is **DENIED.** An appropriate order follows.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** 3/29, 2019